CASE 22—ACTION BY EASTERN KENTUCKY TIMBER AND LUMBER CO. AGAINST E. C. CHENAULT AND OTHERS TO QUIET TITLE TO LAND — Nov. 30.

# Chenault, &c. v. Eastern Kentucky Timber and Lumber Co.

APPEAL FROM POWELL CIRCUIT COURT—J. M. BENTON, CIRCUIT JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL. · AFFIRMED.

QUIETING TITLE—NATURE OF PROCEEDINGS—SUIT IN EQUITY—LEGAL ISSUES—TRIAL BY JURY—APPLICATION—DENIAL—LACHES—DISCRETION—DEEDS—CONSTRUCTION—RESERVATION.

1. Under Kentucky Statutes 1903, section 11, providing that it shall be lawful for any person having both the legal title and possession of lands to institute a suit in equity against any other person setting up claims thereto to quiet title, a proceeding to quiet title was properly brought in equity, though all the issues in such action were legal.

2. Where defendant made no application to have a suit to quiet title involving only legal issues filed February 19, 1900, transferred to the ordinary docket for trial by jury until at the November 1902, term of the court, it was not an abuse of discretion to refuse to grant such motion on the ground of laches, though, if made within a reasonable time, defendant would have been entitled to have the same granted as authorized by Civil Code Practice, sec. 12.

3. In an action to quiet title, evidence HELD to show that the only tract reserved from a deed to the land in controversy was a tract which the grantor had previously conveyed to another.

J. B. WHITE AND J. H. HAZELRIGG, ATTORNEYS FOR APPELLANTS.

1. The contention for appellee that, if the action be *quia timet*, the right to try a legal issue of fact by a jury does not exist, as in other equitable actions, can not, we think, be sustained by reason or authority even if the case were purely one of that kind. For it is not the kind or form of action that determines the right of jury trial, but the nature of the issue of fact to be tried. If the issue of fact be purely a legal issue triable by jury, the right to such trial can not be denied. If such issue

Chenault, &c. v. Eastern Kentucky Timber and Lumber Co.

of fact be equitable, as for instance in *quia timet* those which cloud the title, as obtaining deeds to the property, giving mortgages upon it—acts showing an intention to wrongfully injure the right of the owner—they are equitable and triable by the court.

2. Section 12, Code, bases the right to jury trial not on the action, but in the action upon the issue to be tried. Appellee makes no distinction between the action and the issue. If a jury trial be a right arising on an issue, in one kind of equitable action, why not in another?

3. But this is not a case of *quia timet*, though the petition be of that form. In substance, it is a trespass, as the acts complained of are not apprehended injury or vexatious mischief, but acts already done, constituting trespass—building fences and houses—for which plain remedy at law exists. An action of *quia timet* is one not to try the title or possession, though they must be shown to authorize the remedy intended to be given by the action, which is the prevention of apprehended future probable injury. 2 Story Equitable Jurisprudence, 156-57; 2d Ed. Amer. & Eng. Ency. of Law, vol. 6, pp. 149, 150; King v. Ross, 28 N. Y. App. Div., 371.

4. If this future or apprehended injury is not alleged specifically, and also proven, there is no element of the action of *quia timet* at all, and no remedy can be given, whatever be the form of the petition.

5. It is nowhere proven here by appellee that appellants ever did more than to hold the land, build houses and fences upon it, cultivate the fields and improve the premises, which, however, appellee attempts to show did not constitute sufficient possession. Hence, appellee may very well say in its brief, page 2: "That the real and only question in the case is the title to the land which each party is claiming to own by possession." Where a party concedes that the only question in an action concerning land is one of title, to be determined by possession, can he be heard to deny the right of the other party to a jury trial on this question?

BECKNER & JOUETT, FOR APPELLEE.
    (No brief for appellee.)

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Appellee brought this action by petition in equity under section 11, Ky. St., 1903, alleging that it had both the legal title and possession of the land in controversy, and that ap-

pellants were setting up claim thereto. The defendants answered, denying plaintiff's title or possession, and alleging that the defendants owned the land. They also pleaded adverse possession for many years, and champerty. The suit was filed on February 19, 1900, and an injunction was then granted restraining the defendants from trespassing on the land. At the next term of the court in April, 1900, the defendants filed their answer, which was also made a counterclaim. At the September term the venue of the case was by consent changed to the Powell circuit court, and at the November term, 1901, the plaintiff filed reply. At the November term, 1902, the defendants entered a motion to transfer the action to the ordinary docket for trial and for an issue out of chancery. The court overruled the motion, and this is the first ground of complaint on the appeal.

Section 12 of the Civil Code of Practice provides.: "In an equitable action, properly commenced as such, either party may, by motion, have the case transferred to the ordinary docked for the trial of any issue concerning which he is entitled to a jury trial; but either party may require every equitable issue to be disposed of before such transfer." The issues made in this case were undoubtedly of ordinary cognizance. The action was properly brought in equity, but the issues made by the defendants were that the plaintiff was not the owner or in possession of the land, but that they and those under whom they claimed had been in adverse possession of it over thirty years, and were in such possession when the deed to plaintiff was made. They also denied that plaintiff's title included the land. The purpose of the provision of the Code is to allow a transfer to the ordinary docket of ordinary issues in an equity action. The issues made by the defendants were essentially the same as they would have been had the action been brought on the ordinary side of the

docket to recover the land as in ejectment. If the action had been brought on the ordinary side of the docket, undoubtedly the defendants would have been entitled to a jury trial. The section of the Code above quoted was designed to prevent the plaintiff from affecting this right of the defendants by bringing the action in equity.

But it will be seen that the motion to transfer the action to the ordinary docket  was not made for something like two years and a half after the answer was filed, and, as shown by the record, the parties had in the meantime at a considerable expense substantially prepared the case for trial as an equitable action. Although the defendants were entitled to demand a jury trial, this right, like any other, must be seasonably demanded, and might be waived, not only by express consent to try the case in equity, but by conduct from which such consent may be implied. The action, having been properly brought in equity, might be tried there, unless a jury trial was demanded. A failure to make this demand within a reasonable time was an acquiescence in the action's being on the equity docket, and a waiver of the right to demand a jury trial. This principle is applied throughout legal proceedings. Where a person has an election as to one or two things, his failure to make an election in a reasonable time is held a waiver of his right where the other party will be prejudiced. Thus, in those cases where the plaintiff was required to give a bond for costs, if the bond was not demanded by the defendant the right to it was deemed waived, and the action would not, for this cause, be dismissed. So, where there is a misjoinder of parties plaintiff, if the defendant does not object to the misjoinder before pleading to the merits, he is held to have waived the irregularity, or, if the court has no jurisdiction over the defendant, he waives this if he does not make the

objection promptly. The rule at common law was that all dilatory pleas and motions were waived if not made in due time. Stephens on Pleading, 430. The same principle applies under the Code. If causes of action which can not properly be joined are sued on in the same petition, the error is waived if not made before issue on the merits, and appearance and plea in the court to which the case is removed by change of venue is a waiver of objection to the change of venue, and where a jury is composed of more or less than 12 men this is waived if not objected to. A party will not be allowed at any stage of the proceeding to sleep upon his rights, and afterwards to withdraw a consent which was necessarily implied from his conduct. In the case at bar both sides went on and took a large mass of testimony, evidently contemplating a trial in equity. If after two years and a half the defendants could be allowed to withdraw the consent which they had by necessary implication given to the trial of the case in equity, then not only would they be allowed in this way to delay the trial, but they would seriously prejudice the plaintiff; for, if the case is transferred to the ordinary docket under section 12 of the Code, it stands on the ordinary docket for trial as any other case, and each party is entitled to have on the trial the personal attendance of the witnesses as though the case had originally been brought in ordinary. The right to a jury trial under the section of the Code quoted is necessarily a right to a jury trial according to the forms of law, and therefore the depositions which had been taken could not be read, except by consent, where the presence of the witnesses would have been necessary if the case had been originally brought on the ordinary docket. To have transferred the case to the ordinary docket would, therefore, have been to have set at naught substantially the greater part of

the work that had been done in two years in preparing the case for trial. Under such circumstances the court did not abuse his sound discretion in overruling the motion to transfer the case to the ordinary docket. For the same reason he did not abuse his discretion in refusing to order an issue out of chancery, for this is always a matter of discretion with the circuit judge, and the verdict of the jury on an issue out of chancery is only advisory, and may be disregarded by the chancellor in his discretion.

We do not mean to lay down the rule that under section 12 of the Civil Code of Practice, the motion for the transfer of an action to the ordinary docket must be made when the answer is filed. We only mean that it must be made within a reasonable time, and that, where it is not made within a reasonable time, and the party has, by his conduct, impliedly consented to the trial of the case on the equity docket, he should not thereafter be allowed to withdraw this consent to the prejudice of the adverse party. Whether there has been an unreasonable delay in making the motion is a question to be decided by the circuit court in his sound discretion, and his judgment will not be disturbed here unless there is an abuse of discretion. In the case before us we think the circuit court properly overruled the motion.

Whether the plaintiff's title covers the land in dispute depends upon the proper construction of the following words in the deed made by Thomas Duckham to Bush and Quisenberry: "Beginning at Grigsby and Elkin's corner on the cliff of the Smoky Fork of Devil's creek, and running thence to the Hotel Cave, thence down the Hotel Cave branch to the Graining Block Fork of Red river; thence down the meanderings of said fork to the mouth of the Middle Fork of Red river so as not to go over the cliffs to interfere with any lands or sugar tree on Red river; thence up the

Illustration of Controversy.

Middle Fork opposite the Spruce Gap, crossing the dividing ridge; thence down the Pigeon Fork of Devil's creek to the mouth of Smoky Fork of said Devil's creek; thence up with the meanderings of said fork to the beginning."

The controversy is illustrated by the accompanying plat:

The beginning corner is at 1, and is undisputed. The second corner, Hotel Cave, is at 2 on the plat, if the cave is the corner. But it is insisted for appellants that the cliff running above the cave is known as "Hotel Cave," and that the call is really for the cliff. Graining Block Fork and the Middle Fork at their junction form Red river. Along Graining Block Fork are precipitous sandstone cliffs some 300 feet high, and between the cliffs and the stream there is bottom land varying in width, but in all comprising a valuable body of land of several hundred acres. It is insisted for appellants that the deed runs to the cliffs at Hotel cave, and follows the cliffs around to the mouth of Red river. It is insisted for appellee that the line runs to the cave at 2, and follows the meanders of Hotel Cave branch to Graining Block Fork and its meanders to the line of Elizabeth Townsend's tract near the junction of Graining Block Fork and Middle Fork. The question turns on these words in the deed: "So as not to go over the cliffs or interfere with any lands or sugar tree on Red river." The Hotel Cave branch is seven-tenths of a mile long, and Graining Block Fork, from the point where Hotel Cave branch strikes it to its junction with Middle Fork, is nearly two miles long. On February 27, 1837, or about six weeks before the deed to Bush and Quisenberry was made, Thomas Duckham conveyed to Elizabeth Townsend the tract of land lying at the junction between Middle Fork and Graining Block Fork, and it is reasonable to conclude that in the deed

to Bush and Quisenberry he did not intend to include the land which he had previously conveyed to Mrs. Townsend. The weight of the evidence clearly shows that the place known as "Hotel Cave" is the cave at figure 2. If the first line of the deed is run to the figure 2, we are at the source of Hotel Cave branch, and the next call of the deed must follow the meanders of the branch to the Graining Block Fork, and then the next call will follow the meanders of that fork to the mouth of the Middle Fork. The cave is under the cliff, and, as shown on the map, on the far side of the little valley from the point 1. In addition to this, it would seem reasonable that, if the grantor intended to convey only to the top of the cliff, he would have called in the deed to run to the top of the cliff, and thence running with the top of the cliff; for the valley is at some places of considerable width. Graining Block Fork is not Red river. Red river is formed by the union of Graining Block Fork and Middle Fork. The grantor nowhere designates Graining Block Fork as Red river, and the reservation is only of any lands or sugar tree on Red river. The Elizabeth Townsend land might, with some propriety, be designated as on Red river, as it lies just at the junction of the two streams, and under the cliffs; but to apply this term to land extending all the way up to Hotel Cave would be to violate well settled rules of construction. The grantor in making a deed chooses his own language, and where it is ambiguous it must be construed against him. It was incumbent on the grantor to express what was reserved out of the deed with reasonable clearness. The operation of the grant as between the grantor and the grantee will not be restricted upon doubtful inference. But the appellants do not claim under Thomas Duckham, and, although this deed was made something like 60 years ago, neither he nor any one claiming

Chenault, &c. v. Eastern Kentucky Timber and Lumber Co.

under him has set up claim to the land in dispute. We regard this a strong circumstance to show what he understood was conveyed by the deed, and the object in the construction of all instruments is to effectuate the intention of the parties in making it. The circuit court therefore properly held that only the tract of Elizabeth Townsend was excluded from the operation of the deed.

Appellants showed no record title to the land. They claim under Alex. Spencer, who made a settlement in the valley near the mouth of Hotel Cave branch, and under Patterson Ponder, who made a settlement lower down, and near the point marked "Dark Hollow." We think it reasonably clear from the evidence that Patterson Ponder had sold in writing his rights to those under whom the appellee claims years before he made the bond under which appellants claim, and, while the proof is conflicting as to Spencer's possession, we must give some force to the chancellor's finding on the question of fact, and under all the evidence we have reached the conclusion that his finding that Spencer was not in continuous adverse possession of any of the land for 15 years should not be disturbed. While the testimony as to whether appellee's title was champertous was conflicting, we think the decided weight of the evidence sustains the chancellor's opinion.

Judgment affirmed.

Judges Nunn and Paynter dissent from so much of the opinion as holds appellants had waived their right to have the case transferred to the ordinary docket for trial.

Petition for rehearing by appellant overruled.