### Riffe & Jones v. McKinney Deposit Bank.

(Decided October 26, 1916.)

Appeal from Lincoln Circuit Court.

1. Equity—Matters Triable in Equity.—Where a case involves complicated accounts so as to render it impracticable for a jury to intelligently try the case, it should be tried in equity by the chancellor, and it is not error in such cases to refuse, upon motion to transfer the issues to the ordinary docket, for a jury trial.

2. Equity—Motion for Issue Out of Chancery—Appeal and Error. —Where a case is brought in equity, and the issues are made up, and the proof taken by depositions, a motion made for an issue

out of chancery, when the case was ready for trial, and after the proof had been so taken, is not seasonably made, and the action of the court in overruling it will not authorize a reversal of the judgment.

ROBERT HARDING and GEORGE D. FLORENCE for appellants.

J. B. PAXTON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellants, Riffe and Jones, were engaged in the produce business, and the firm ran an account with the appellee bank from July 1, 1907, to June 30, 1912. The account was kept in the usual way by deposits being made from time to time, and checks being drawn against it in the same manner. On February 4, 1913, the firm filed this suit in equity against the bank,. charging in substance that during the time of the running of the account they had deposited something near $100,000.00, and the bank had improperly kept its books by failing to credit it with deposits, none of which was designated, and had wrongfully charged the account with unspecified amounts, and that the facts, as plaintiffs *believe*, would show the bank to be indebted to the firm in a sum at least as much as $1,500.00, for which amount they prayed judgment, and in the petition ask that the case be referred to the master commissioner. A demurrer was filed to the petition by the bank, but there is no record of it ever having been acted on. Some time after the filing of the demurrer an answer was filed by the bank, which is a general denial, and, following this, an amended petition was filed, in which it is stated that plaintiffs' account with the bank should have, but had not, been credited with the following amounts: August 12, 1908, $200.00; May 28, 1909, $10.00; June 1, 1909, $99.00; February 26, 1910, $100.00; June 7, 1910, $352.72; September 21, 1911, $43.10; April 2, 1912, $517.05. It is furthermore alleged in the amended petition that the account had been wrongfully charged with two checks which had been issued by the firm of Riffe & True, the amount of these checks being one for $23.70, and the other for $6.90, or a total wrongful charge of $30.60. These alleged errors against plaintiffs aggregate $1,352.47, for which amount judgment was prayed in the amended pleading. These items were put in issue by an appropriate pleading, which

was also made a counter-claim, wherein the bank sought to recover of plaintiffs the sum of $115.66, which it charged was an overdraft created during the running of the account. After the taking of proof the case was submitted and the court dismissed both the petition and the counter-claim, and from this judgment the plaintiffs prosecute this appeal. On the 3rd day of June, 1914, the plaintiffs entered a motion for the court to appoint an expert to examine the books of the defendant, so far as applicable to the account in question, but this motion was overruled, and on the same day a motion was made to transfer the case to the ordinary docket, which was not acted upon by the court, and the motion for such transfer was renewed on the 11th day of November, 1914, and, so far as we can ascertain from the record, met a like fate. On November 21, 1914, plaintiffs moved the court for an issue out of chancery to try the issues with reference to the various items in controversy, which motion was overruled, and the cause was thereupon submitted, with the result heretofore stated.

The only testimony in the case consists of the deposition of the plaintiff, Jones, and that of the cashier of the defendant. The former, in giving his deposition, exhibited his pass book, as well as one or two deposit slips, and these, as presented by him, had a tendency to establish at least a part of plaintiff's claim, but the deposition of the cashier very thoroughly, to our minds, explained these apparent errors. By the cashier it is shown that the two items in issue, of $200.00 August 12, 1908, and $100.00 February 26, 1910, while shown as deposits on the pass book exhibited with the deposition of plaintiff, were not in reality deposits as of the dates shown, but on those particular dates, in order to take up overdrafts then existing, the plaintiffs executed the two notes for the respective amounts, neither of which was entered upon the ledger or books of the bank at that time, as the cashier was not authorized to accept the notes without the consent of the directors, and he temporarily carried the accounts in this way on his own responsibility. Later on the notes were accepted by the bank and afterwards paid, and at the time of the acceptance the plaintiffs were given credit for the proceeds.

As to the two items of $99.00 of date June 1, 1909, and $43.10 of date September 21, 1911, it is shown that while on the plaintiffs' pass book these items were entered as deposits, as a matter of fact they were

balances carried forward, and should have been entered
on their book as balances instead of deposits; this is
conclusively shown as to those two items. The item of
$352.72 of date June 7, 1910, is shown by the cashier to
have been a mistake as to its date. Later on it is shown
that there was a deposit of precisely this sum, and it
was composed of various checks which had been issued
to plaintiffs by different persons, corresponding exactly
to the deposit slip filed with plaintiffs' deposition, not
only as to the total sum of the deposit, but the checks
are for identically the same sums on precisely the same
individuals. Under these circumstances, it is so ap-
parent that the mistake related only to the date that we
find no room for two conclusions. As to the item of
$517.05, April 2, 1912, the books of the bank show this
deposit to have been made on April 26, 1912, instead of
April 2 of that month, as shown by the deposit slip
filed by plaintiffs. This item, also, is composed of pre-
cisely the same checks on identically the same persons,
and it is evident that in writing the date on the deposit
slip the person who made it failed to place a six after
the two so as to make it read April 26, instead of April
2. It is shown by the cashier that the two checks of
$23.70 and $6.90 were originally charged to plaintiffs'
account, when they should have been charged to the
account of another firm of Riffe & True. This mis-
take was afterwards corrected by crediting the plaint-
iffs with the amount of them, and charging that amount
to the account of Riffe & True. The item of $10.00 of
date of May 28, 1909, is explained by the cashier in this
way: "In balancing the pass book we took all the de-
posits on the ledger, but the young man who copied the
pass book copied the check as a deposit, and in the sum
total of the deposits the $10.00 was not included in the
total amount." This testimony is not refuted, and, we
think, is plausible and satisfactorily explains this con-
tested item.

With the proof as we have explained it, it is con-
tended that the judgment should be reversed because it
is flagrantly against the evidence, and that the court
should have transferred the case to the ordinary docket,
or, if not, should have sustained the motion for an issue
out of chancery. As to the first contention, we confess
our inability to discover any grounds whatever for it.
On the contrary, as we view it, the evidence overwhelm-
ingly supports the judgment. Indeed it is doubtful if

a different judgment would be permitted to stand under the testimony we have here.  The errors complained of and admitted are perfectly consistent with fair and upright dealing, and such as might occur with the most accurate and painstaking business man.    There are only eight of them covering a period of five years, and we see nothing in the record to raise the slightest suspicion of any effort to in any manner defraud the plaintiffs.

As to the two motions made by the plaintiffs looking to a jury trial of the issues, it might be seriously questioned whether, under section 10 of the civil code, and cases construing it, the plaintiffs had a right to have a jury trial.  There were eight items involved, and at least two of them were composed of several other items, all of which made the matters to be investigated considerably complicated, and we are not altogether certain but that these matters were properly triable by the chancellor, under the provisions of subsection 4 of section 10 of the code, *supra*.  Moreover, with the evidence of the convincing character that we have found it to be, we are confident that the jury could have come to no other conclusion than that reached by the chancellor, and, therefore, the plaintiffs were not prejudiced by the action of the court in overruling their motions. But for a still further reason we are convinced that the court properly overruled these motions; in order for the party to succeed with this character of motion it should be seasonably made.  In this case the motion to transfer the case to the ordinary docket seems to have been practically abandoned, and the motion for an issue out of chancery was not made until nearly a year after the suit had been filed, and not until many months after the issues had been made up and the proof taken.  Under repeated rulings of this court, the latest of which is Proctor v. Tubbs, 166 Ky. 676, the plaintiff was too late in making them.

Finding no error prejudicial to the substantial rights of the appellants, the judgment is affirmed.