## Schenk et al. v. Schenck.

(Decided June 16, 1931.)

MORTON K. YONTS for appellants.

BATSON, CARY & WELCH for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

This appeal is from a judgment denying the prayer of the appellants, nieces and nephews of Conrad Schenk, to set aside a deed made a month before his death conveying his entire estate to his brother, the appellee Bernard Schenk. Excepting the claim that the issue should have been submitted to a jury, the only question requiring consideration is whether the chancellor reached a correct conclusion from the facts.

The property involved is about sixty acres of land on the Ohio river in Jefferson county and worth from $15,000 to $18,000. It had been acquired by Conrad Schenk by inheritance. The deed is in the usual form of a fee-simple conveyance with a recited consideration of one dollar, but it is disclosed that in fact it partook of the nature of a testamentary disposition with the understanding that the grantee should see after the wants of the grantor so long as he should live.

Conrad Schenk was a bachelor past sixty years of age, and concededly at the time he made the deed, and for some time before, was physically decrepit. The evidence of the plaintiffs also tends to show that he was mentally incapable of executing a conveyance and became the easy subject of undue influence, which had been exercised over him, inducing the conveyance to his well-to-do brother, who had displayed little or no interest in him during many years past, to the disinheritance of themselves, his nieces and nephews, who had always

manifested a protective interest in his welfare and with whom he was friendly. He was of very limited education and had spent practically all his years in idleness and lived after the manner of a recluse. His principal associations were with men who followed fishing for a living, and it is claimed that not only his physical but mental state was stunted and distorted by reason of the life he led.

In the winter months Schenk stayed at a house in the city which had been the family home and in which he at one time owned an interest, but had surrendered in the settlement of his sister's estate to his brother for a larger interest in the land on the river. However, he continued to reside in it and treated it as his own. During the summer he stayed on his farm which was cultivated by a tenant, and at all times seems to have lived alone and cared for himself except for such interest and favors as his neighbors, and on occasion some of his nieces and nephews, bestowed upon him. Between 1918 and 1926 he had suffered two or three partial paralytic strokes, which progressively interfered with his locomotion and impaired his speech. Some witnesses say he became sluggish in mind as well as in body, and that he did not appear to understand what was being said to him or the subject about which he was trying to converse nor to carry on a connected conversation. One or more stated that during that late summer he did not seem to recognize them. About the first of September, while in the country, Mr. Schenk was again stricken and became almost helpless physically. He was taken to his home in the city and later, on October 14th, removed to a hospital, where he died one week later.

Before we direct our consideration to events subsequent to his removal to his home in the city, it may be well to say also that some of his neighbors, men of standing and intelligence, related circumstances upon which they based their expressed opinion that he was not capable of understanding the nature of the transaction according to the usual standards. Other witnesses, especially his fishermen friends, expressed the converse opinion. Some of them related that he had stated his purpose to sell or give his property to his brother; also, that he had expressed the idea that his nieces and nephews were unduly apprehensive as to its disposition. It was established that his brother never came to see him

on the farm but sometimes, though not often, visited him in the city; and also that some of the appellants who owned adjoining property where they stayed during the summer months treated him with proper interest and consideration, as far as he would let anybody administer to his comfort, and that he was on friendly relations with them. However, there was evidence to the effect that he believed that in the settlement of the estates of his brother and sister, he had been discriminated against by one or more of them and favored by his brother, and for that reason indicated some aversion towards his nieces and nephews. They, in this record, undertake to show that the idea as to a discrimination was an insane delusion, and rely upon that propositon as indicative of his lack of mental capacity. On this matter there was some basis for his belief. We do not mean to intimate a conclusion of unfairness, but the equality of distribution or division of the land is simply one of opinion. Trustee of Epworth Memorial Methodist Church v. Overman, 185 Ky. 773, 215 S. W. 942.

The evidence respecting Schenk's condition after he was taken into the city is conflicting. Some witnesses indicate that he was helpless, and others that he was able to potter around and wait on himself as usual but with greater difficulty. It was during this period, a week or ten days before the deed was made, that his brother was written concerning his condition and came to Louisville. His attentions to his invalid brother are suggested by the appellants to have been with an ulterior motive, since he had previously neglected him, while the appellee's evidence indicates that he had never neglected him and that his ministrations were such as could and should have been expected of one elderly brother to another and were prompted altogether by a fraternal devotion. It is pretty well shown that the brother had through the years materially assisted him, particularly by permitting the occupancy of the home, which belonged to the brother. The defendant related the delivery to himself of some bonds some time previous to the making of the deed which were to be used at his death for the erection of a monument; and it appears he had also been given some furniture. These circumstances are relied on as indicating undue influence because they were concealed at the time. The evidence of the plaintiffs along this line is in effect that they did not know of the assistance rendered or other transactions between the brothers. While the

circumstances surrounding the parties and the execution of the deed may have afforded ground for suspicion of the exercise of undue influence, the evidence is not sufficient to establish it.

The grantor's pastor, druggist, and city neighbors, as well as those in the country, testify to his capacity and to his expressions of a purpose to convey or devise his property to his brother. There is no contradiction of the evidence that the grantee was to care for his brother and bear his funeral expenses and cost of a monument; nor that he did so.

The medical evidence is to the effect that Conrad Schenk was afflicted with Bright's disease, which produced the paralytic attacks; and that such may seriously impede physical functions without interfering with the mental, although as the disease progresses and the attacks recur the mental functions are affected. In this case they were so disturbed, but not to any material degree until after the deed was executed. There is contradiction in the opinions of the doctors as to the grantor's mental capacity on the day of the execution of the deed, but the better opportunities for accurate knowledge and the reasoning displayed indicate, it seems to us, that the professional opinions that he knew what he was doing should prevail.

We have not undertaken to draw in the details nor put the color into the picture as the many circumstances more vividly portray it to us, but have only sketched the outlines. As every life is differently lived, and the relations between the parties concerned are different, so must every case of this character be adjudged more or less by its own peculiar facts; the court being guided by analogous precedents and the instant facts gauged by certain established general rules. One of those rules is that less mentality is demanded where the conveyance is in the nature of a gift, as contradistinguished from a trade or sale, and the deed will be sustained unless it is shown an imposition was practiced upon the donor. Coupled with this, however, is the correlative rule that the weaker the mentality the less evidence of the exercise of undue influence is needed. Stege v. Stege, 237 Ky. 197, 35 S. W. (2d) 324. As thus measured, a consideration of the whole evidence leads us definitely and surely to the same conclusion that the chancellor reached.

The same conclusion is reached if we regard the conveyance as being in consideration of his maintenance

and burial. It is not unnatural that a brother in the physical condition of the grantor should thus dispose of his estate to his only brother whom he had every reason to believe would see after his needs the remaining days of his life, which he must have realized could not be many, even though the disposition deprived the children of his deceased brother of what they might reasonably have expected.

In Dixon v. Dixon, 236 Ky. 608, 33 S. W. (2d) 611, 614, the evidence of undue influence and of mental incapacity was stronger than that presented in this record. Over against it was stronger evidence of a past service and of a predetermination for a greater time to make the disposition which an old man made to his nephew. But we may repeat this reasoning as applicable to the facts of the present case:

> "Nothing is worse than the condition of an old man without the comforts of home, and with no one to look after his wants, and, were we to hold that, whenever one who is old and infirm conveys his property to another in consideration of support, the deed is presumptively the result of undue influence, no one would care to undertake the burden, and it would put it out of the power of the old to secure the comforts of life in their declining years. Petty v. Pace, 207 Ky. 592, 269 S. W. 713. . . . No one could tell how long the grantor would live, and the extent of the burden is not to be measured by what subsequently transpired, but by the situation existing at the time of the transaction with its attendant possibilities. Parsley v. Parsley, 233 Ky. 42, 24 S. W. (2d) 931.''

To several persons, after the deed had been executed, the grantor expressed his satisfaction in having made it and so arranged his affairs. We are not disposed to thwart those purposes by setting it aside.

This suit was filed, November 3, 1927. The issues were formed and the case referred to the official stenographer for taking depositions in April, 1928. The appellants announced they had closed their evidence in chief in May, 1929. On June 8, 1929, the case was submitted. On October 8, 1929, it was set for a hearing on exceptions to depositions. On October 11, 1929, for the first time, the plaintiffs, now appellants, filed a motion to transfer the case to the common-law docket for trial of the legal

issues, coupled with the alternative motion that if not sustained to submit them as issues out of chancery. The reason assigned for this unusual delay is that it was not disclosed until June by witnesses for the defendant that the grantor considered his deed as a will, and the summer vacation of the court had intervened. A motion to transfer from one docket to another must be seasonably made and in accordance with section 12 of the Civil Code of Practice. Chenault v. Eastern Kentucky Timber & Lumber Company, 119 Ky. 170, 83 S. W. 552, 26 Ky. Law Rep. 1078; Board v. Dorris, 168 Ky. 195, 181 S. W. 1098; Riffe & Jones v. McKenney Deposit Bank, 171 Ky. 757, 188 S. W. 775; Keith v. Walker, 221 Ky. 741, 299 S. W. 730.

Waiving all other questions, we have no difficulty in holding that overruling them was a proper disposition of the motions.

Accordingly, the judgment is affirmed.