### Nussbaum v. Wasbutsky.
(Decided May 24, 1938.)

W. LORAINE MIX and HORACE H. ROTH for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Karl Nussbaum, and appellee, Sam Wasbutsky, junk dealers in the city of Louisville, entered into the following contract April 13, 1935:

"PURCHASE CONTRACT

"MAIN OFFICE, No. 1094

"2307 Standard Avenue.

"KARL NUSSBAUM

 "2307 Standard Avenue.

"Dealer in Scrap Iron, Metal, Machinery, Power Transmission and Structural Steel Dismantling of Plants a Specialty.

"Situated on Kentucky & Indiana R. R. Switch.

"Louisville, Kentucky, April 13, 1935.

"Karl Nussbaum, agrees to buy and agrees to sell the following material:

| QUANTITY | Two *too* Three Hundred tons. |
|---|---|
| MATERIAL | Aluminum Foil free from papei |
| PRICE | . One and One Half Cent per lbs. |
| F. O. B. | 2307 Standard Avenue, Louisville, Ky. |
| TERMS | CASH |
| SHIPMENT | In Sixty Days. |
| REMARKS | This option is good for twenty (20) days— |

"It is being understood that Sam Wasbutsky is entitled *too* One half Cent additional on material delivered to Standard Street Yard providing this material is sold under this option delivered to date approximately Seventy Tons.

"Where material is purchased delivered, invoice must show originating point and freight must be deducted, or invoice must be accompanied by bill of lading showing freight prepaid to destination.

"If the material is not shipped within the time specified herein, the purchaser, in addition to all other legal remedies, has the privilege of cancelling this contract without notice.

"Shipments accepted subject to Strikes, Accidents, Embargoes, at Consumer's Works or other causes beyond our control.

"Accepted by Sam Wasbutsky
                    "KARL NUSSBAUM
"DATE April 13, 1935
                    "Per Karl Nussbaum
                              "F. A."

The contract was written on appellant's business stationery, and was dictated by him in the presence of appellee and written in longhand by his son, Walter Nussbaum, his sales manager.

According to an audit by Mr. L. S. Mayer, an ac-

countant, the appellee delivered to appellant, 273,689 pounds of aluminum foil and was paid a total of $2,918.00, which appellant claimed was .the amount due under the contract. Contending that he was entitled to 2 cents a pound under the contract, the appellee brought this action on September 6, 1935, to recover the difference. In his petition he alleged that he delivered to appellant 257,808 pounds of aluminum foil on which the appellant had paid him 1 cent a pound, and 13,625 pounds on which appellant had paid him 3/4 cents a pound; that appellant agreed to pay 1 1/2 cents a pound upon delivery and an additional 1/2 cent a pound when the foil was sold; that all of said foil had been sold by appellant, and he was therefore indebted to the plaintiff in the sum of $2,748.39. A motion to require the plaintiff to file an itemized statement of the account was sustained, and he filed a statement showing the date and amount of each delivery, the amount due at 2 cents a pound, and the dates and amounts of the payments made to him by the defendant. The statement showed the total amount delivered was 273,633 pounds, the amount due at 2 cents a pound was $5,472.66, and the credits amounted to $2,627.29, leaving $2,845.37 due. On January 18, 1936, the defendant filed an answer, which was merely a traverse. The case was assigned to May 4, 1936, for trial, and on that day the defendant filed a motion for a continuance, supported by the affidavit of his attorneys, stating that he was ill and out of the state and unable to be present. The motion for a continuance was sustained, and the case assigned to November 17, 1936, for trial. On November 7, 1936, the defendant filed an amended answer and a motion to set aside the order assigning the case to trial and further to transfer the action to the equity side of the docket. In the amended answer the defendant alleged that the written contract filed with the petition was ambiguous and did not express the true intent and purpose of the parties; that by the agreement actually made by the parties the defendant was to have the option to purchase from plaintiff certain quantities of aluminum foil free from paper at a fixed price of 1 cent a pound, and if the defendant could obtain a resale of the foil to a certain party for the export trade at a price sufficiently high to justify same the defendant was to pay plaintiff an additional 1/2 cent a pound; that by mutual mistake of the parties the fixed price was writ-

ten in the contract 1½ cents instead of 1 cent; and the words "for export" were by mutual mistake of the parties omitted from that part of the contract providing for an additional payment of ½ cent a pound when the foil was sold by the defendant. In paragraph 2 of the amended answer it was alleged that the plaintiff had delivered to the defendant various loads of foil for which he was paid cash 1 cent a pound on delivery; that every transaction was in itself a separate sale and completed upon the payment of same by the defendant; and that the plaintiff had been paid in full. The defendant asked that the action be transferred to the equity side of the docket for trial, and that the contract be reformed to express the true intent and purpose of the parties. The court sustained a motion to strike the amended answer from the record, and ordered it stricken "with leave to the defendant to introduce parol testimony in explanation of the contract sued on herein." A second amended answer, containing substantially the same averments, was filed over plaintiff's objection. The plaintiff then filed a reply, and, on a trial before a jury, a verdict was returned for the plaintiff for the sum of $2,555.18. From the judgment entered thereon, the defendant has appealed, and urges as grounds for reversal that the verdict is flagrantly against the evidence, and that the court erred in giving and refusing instructions, in admitting and rejecting evidence, and in overruling appellant's motion to transfer the action to the equity docket.

Little need be said in the discussion of the first ground. The appellant testified that he agreed to pay to appellee 1 cent a pound for the foil delivered under the contract, and an additional ½ cent a pound in the event he sold the foil to the Lincoln Steel Products Corporation of New York for export; that the price of aluminum foil was higher abroad than in the United States; and that he received a letter from the New York exporting company making inquiry concerning 250 tons of foil. He showed this letter to appellee, and agreed to pay him an additional ½ cent a pound if he succeeded in selling the foil to the New York company for export. The appellant was corroborated to a certain extent by his son and Miss Lottie Ketterer, one of his employees. Appellee denied that the letter from the Lincoln Steel Products Corporation was shown to him

or that the name of the corporation was ever mentioned to him during the negotiations for the sale of the foil. He testified unequivocally that the agreed price for the foil was 2 cents a pound, 1½ cents to be paid on delivery and ½ cent when the foil was sold by appellant. It was not agreed that the additional ½ cent should be paid only in the event the foil was sold for export. He explained the payment by appellant as the deliveries were made of 1 cent instead of 1½ cents as specified in the contract by stating that this was done at appellant's request. He was asked this question and made this answer:

"Was there any excuse that he gave you for not paying you the full amount?

"A. Yes sir; I told him I am paying out that much for burning the stuff; I need some money. He said I am tied up with the General Distillery Company for money; you can make it out, as soon as I sell it, I will pay all of it."

There was a direct conflict in the testimony on the points in issue, and it cannot be said the verdict is flagrantly against the evidence. The contract is not ambiguous. The price is plainly fixed at 1½ cents a pound cash and ½ cent additional when the material is sold by appellant. The contract was written by appellant's son and sales manager, Walter Nussbaum, at appellant's direction, and, even if it should be conceded that there is room for construction, it would have to be construed most strongly against appellant who drafted and prepared it. D. L. Walker & Co. v. Lewis, 267 Ky. 107, 101 S. W. (2d) 685; Warfield Natural Gas Company v. Clark's Adm'x, 257 Ky. 724, 79 S. W. (2d) 21; 97 A. L. R. 971; Mammoth Cave National Park Association v. Whittle & Demunbrum, 254 Ky. 63, 70 S. W. (2d) 990; Theatre Realty Company v. P. H. Meyer Company, 243 Ky. 346, 48 S. W. (2d) 1.

Appellant complains because four witnesses introduced by the appellee were permitted to testify concerning the compensation paid to them for cleaning aluminum foil. It is argued that this testimony was incompetent and irrelevant. It seems that the Reynolds Metal Company deposited large quantities of foil and paper in bales on a private dump between Adair and Cabell streets in Louisville, and the witnesses sepa-

rated the foil from the paper, burned the paper, and were paid 1 cent a pound by appellee for the clean foil. The attorney for the appellant cross-examined each of the witnesses in detail, and no objection to the testimony was made until the conclusion of the testimony of the fourth witness, when the attorney for the appellant made this motion: "I move to strike the testimony of the four witnesses for the reason that the time is not fixed at about the time of the transaction here involved." These witnesses were uncertain as to the time when the work was done, but J. D. Nelson, the owner of the lot where the bales of foil and paper were dumped, fixed the time as the winter of 1934-35. He also testified that he cleaned foil and sold it to appellee. Appellant did not object to his testimony. It will be noted that the testimony of the other witnesses was not objected to on the ground of incompetency. Objections to evidence on the ground that it is inadmissible because of incompetency cannot be raised for the first time on appeal. Linville's Distributee v. Linville's Adm'x, 263 Ky. 499, 92 S. W. (2d) 800; Canada v. Coleman, 208 Ky. 248, 270 S. W. 756. Phillip Hyman, a witness introduced by appellee, testified that he purchased a small lot of foil from appellee for 4 cents a pound. This testimony was not objected to; but on cross-examination, he was asked if he had a suit pending in the Jefferson circuit court against the appellant, and an objection to this question was sustained. The witness should have been permitted to answer, since the fact sought to be elicited was admissible for the purpose of showing bias and prejudice on his part. However, his testimony was not important, and the error could not have been prejudicial.

Both the appellant and appellee offered instructions which were refused. The court, on its own motion, gave the following instructions:

"1. If the jury believe from the evidence that at the time the paper dated April 13, 1935, was entered into and signed by the plaintiff, Sam Wasbutsky, and the defendant, Karl Nussbaum, it was agreed and understood between the plaintiff and defendant, that the plaintiff Sam Wasbutsky, was to receive one and a half cents per pound for each pound of aluminum foil delivered by the plaintiff, Sam Wasbutsky, to the defendant, Karl Nussbaum,

at his Standard Street Yards, and that when said aluminum foil was sold by the defendant, Karl Nussbaum, the plaintiff, Sam Wasbutsky, was to receive an additional one half cent per pound for said material so delivered to the Standard Street Yards of the defendant, then the law is for the plaintiff, Sam Wasbutsky, in the sum of $2,555.18, with interest or not, in your discretion, from September 7, 1935, and you will so find.

"2. On the other hand, if you believe from the evidence that at the time the paper dated April 13, 1935, was entered into and signed by the plaintiff, Sam Wasbutsky, and the defendant, Karl Nussbaum, it was agreed and understood between the plaintiff and defendant, that the defendant, Karl Nussbaum, was to pay the plaintiff, Sam Wasbutsky, one cent per pound for each pound of aluminum foil delivered by the plaintiff to the defendant, Karl Nussbaum, at his Standard Street Yards, and that if and when said aluminum foil was sold by the defendant, Karl Nussbaum, for export, then the defendant, Karl Nussbaum, was to pay to the plaintiff, Sam Wasbutsky, an additional one-half cent per pound for all aluminum foil delivered by the plaintiff, Sam Wasbutsky, to the defendant, Karl Nussbaum, at his Standard Avenue Yard, then the law is for the defendant, Karl Nussbaum, and you will so find."

Appellant insists that the instructions are erroneous because there were two separate and distinct items in controversy, and the court, by its instructions, coupled these items into one item, and required the jury to find for the plaintiff or defendant on both items as a whole and thereby deprived the jury of the right to find for the plaintiff on one item and for the defendant on the other item. It is insisted that there were two issues: (1) Whether the basic price to be paid was 1 cent or 1½ cents per pound; (2) whether the additional compensation of ½ cent a pound was to be paid on the resale of the foil by the appellant regardless of the place of such resale or was to be paid only on its resale for export, and that the instructions should have been drawn so as to permit the jury to make separate findings on these issues. Conceding for present purposes that appellant's contention is sound, he cannot com-

plain, since the court gave substantially the instructions requested by him. He offered two instructions, in the first of which the jury were told that, if they believed from the evidence that it was the intention of the plaintiff and defendant, at the time and place of the execution of the option in controversy, that the defendant was to pay to the plaintiff 1½ cents per pound for aluminum foil free from paper on delivery and an additional ½ cent when it was resold, without regard to whom it was resold, then the law was for the plaintiff, and they should so find. Instruction No. 2 offered by the appellant told the jury that, if they believed from the evidence that it was the intention of the parties that the plaintiff was to receive 1 cent on delivery and an additional ½ cent a pound when the aluminum foil was resold by the defendant for export trade, then the law was for the defendant, and they should so find. While the instructions given by the court are worded differently, yet, they follow, in substance, the instructions offered by appellant.

Appellant finally insists that the court erred in overruling his motion to transfer the action to the equity side of the docket after he filed his amended answer asking for a reformation of the contract. The action had been pending fourteen months, and an answer completing the issues was filed nearly ten months before the amended answer was tendered. Trial of the case had been delayed by the defendant, and, under the circumstances, it was a matter within the sound discretion of the trial judge whether or not the defendant should be permitted to file the amended answer raising an equitable issue and to have the action transferred to the equity docket. Defendant was permitted later to file a second amended answer, which contained substantially the same averments, and to have the questions raised by this pleading submitted to a jury. The motion to transfer the action to the equity docket was not seasonably made. Civil Code of Practice, secs. 10, 11, and 12; Schenk v. Schenk, 240 Ky. 237, 242, 41 S. W. (2d) 1102; Keith v. Walker, 221 Ky. 741, 299 S. W. 730; Brown v. Crescent Stave Company, 207 Ky. 470, 269 S. W. 739.

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed.