**Mattie GIBSON et al., Appellants,**

v.

**CENTRAL KENTUCKY NATURAL GAS CO., Inc., Appellee.**

Court of Appeals of Kentucky.

Oct. 31, 1958.

Rehearing Denied March 20, 1959.

Redwine & Redwine, Harold G. Wells, Winchester, for appellants.

L. A. White, Mt. Sterling, for appellee.

STANLEY, Commissioner.

The primary question before us is whether a certain parcel of land is included in an oil and gas lease. Underlying that is the question of whether or not the lessors owned the minerals.

The appellants, Mattie Gibson, widow, and the heirs of Prewitt Gibson, deceased, sued the appellee, Central Kentucky Natural Gas Company, to quiet title to the parcel

and for $3,000 in damages for trespass. The appellee, as defendant, set up a mineral lease from Prewitt and Mattie Gibson of 238 acres and alleged it includes the parcel in controversy. The defendant also alleged that the plaintiffs did not own the oil and gas and that the same was owned by others from whom the defendant had also obtained a lease. It further pleaded estoppel.

The court found the plaintiffs did not own the minerals, but, nevertheless, found the lease executed by Prewitt and Mattie Gibson included the parcel and, further, that the plaintiffs were estopped from claiming otherwise by reason of having received rentals therefor. The judgment was entered dismissing the complaint and the appeal follows.

It was not error for the court to overrule the appellants' motion for a jury trial since suits to quiet title are and have historically been properly triable in equity before a chancellor, and it is within the discretion of the court whether questions of fact will be submitted to a jury. KRS 411.120; Chenault v. Eastern Kentucky Timber & Lumber Co., 119 Ky. 170, 83 S.W. 552. The Civil Rules of Procedure have not changed the method of trial of equitable issues. Clay, CR, 38.01, Comment 2.

About the year 1939 the appellee (hereinafter Gas Company) set about to obtain oil and gas leases, particularly for gas storage, covering an exhausted gas field in Menifee, Powell and Montgomery Counties, which is known as the Menifee Gas Storage Field. See Central Kentucky Natural Gas Co. v. Smallwood, Ky., 252 S.W.2d 866. In obtaining these leases the Company's agents pursued the practice of accepting the acreage which the several landowners stated they had with the understanding that if the acreage should be found incorrect, adjustments would be made in the rentals to conform. On October 10, 1939, Prewitt Gibson and Mattie Gibson executed such a lease of "two hundred (200) acres more or less, including lands conveyed by Hannah

Chatman Si Chapman and Charlie Hudson." The entire tract was described as being bounded on the north, east, south and west by the lands of named parties. After surveys had been made by the Gas Company, Prewitt and Mattie Gibson executed another lease to it, of date July 1, 1948, which is the same as the former lease except that the acreage is described as containing "238 acres more or less."

The parcel in controversy is one which was conveyed to the Gibsons by John Bellamy and wife on December 30, 1925. The Bellamy deed describes the land in a general way and says it contains 60 acres, more or less. It was not recorded until October 22, 1953.

■ The plaintiffs testified positively that this parcel was not included in either of the leases. They gave no reason why it should have been excluded but point to the references in both leases as including conveyances to the lessor by four persons other than John Bellamy. They also point in their brief to the fact that the Bellamy deed was not placed of record until five years after the last lease was executed. Nevertheless, it appears that the general boundary of the acreage by the adjacent lands did in fact embrace the parcel. When the Gas Company's surveyors made the first survey of the Gibson property, which was in 1947, they did not have the Gibson deeds and seem to have used, in a large measure, the boundaries described in the deeds to the adjacent lands, especially as to this parcel in controversy since they did not have the deed to it. They computed all of the Gibson land to contain 238 acres, and it was upon this computation the new lease of July 1, 1948, was based.

In 1952 or 1953 the Gas Company's employees went upon the parcel involved and replugged and recapped a gas well which had been drilled some forty years or more before and long since abandoned. This act of the Company was the basis of the claim for damages for trespass. Thereafter, in 1954, another survey was made for the Gas Company. The Bellamy deed had then been recorded and was used in the surveying. The field notes were sent to the office of the Company and a plat made. The computations of the plat show that the parcel in controversy contained only 36 acres and not 60 as stated in Gibson's deed to it. The other Gibson land was calculated to contain 202 acres. The computation of acreage was based upon level land with such a boundary. A surveyor stated that an actual surface measurement of hills or mountains, if flattened out, would show a greater surface acreage; but in this instance he did not believe the difference would be as much as developed here, that is, the difference between 36 acres and 60 acres, which had been called for in the deeds having general descriptions.

The evidence that this parcel was included in the Gibson oil and gas lease fully supports the finding of the court.

It would seem unnecessary to consider the finding of the court that the appellants do not own any underlying oil or gas since the court found that the parcel in controversy was embraced in the appellants' lease. However, it appears on the face of the record that they do have a limited interest in the gas, and it seems desirable to point that out by way of correcting the finding of fact.

On August 19, 1919, Dossie Bellamy and Daniel Bellamy conveyed to Henry Burges a tract described as containing 85 acres, more or less. The deed contains this reservation: "The oil, gas and mineral rites [sic] is reserved by said party of the first part, second party to have gas for heat and light if developed." On October 19, 1921, Burges conveyed the tract to Bertha Waters. That deed refers to the mineral rights having been reserved by Bellamy, "however, the second party is to have gas to heat and light one dwelling." On October 28, 1922, Bertha Waters conveyed the 85 acres to John Bellamy. Reference is made in the deed to the reservation of minerals by the Bellamys in the above deed.

On May 5, 1925, John Bellamy conveyed 20 acres of this tract to Andie Willoughby, and on October 30, 1925, he, John Bellamy, conveyed the balance of the tract, described as containing 60 acres, more or less, to Prewitt and Mattie Gibson. No reference is made to the reservation of the minerals contained in the first conveyance by Dossie and Daniel Bellamy, but this grantor reserved all the minerals for a period of five years.

Thus, it would appear that the appellants, as owners of the surface of this parcel of land, are entitled to "gas for heat and light if developed," which was excepted from the reservation contained in the Dossie and Daniel Bellamy deed of August 19, 1919. As a matter of fact, this appears to have been recognized in the leases executed to the appellee Gas Company. It seems to us the judgment should be and it is

Affirmed.