## Bradford's Administrator, et al. v. Kinney, et al.

(Decided November 9, 1926.)

### Appeal from Bracken Circuit Court.

Wills.—Evidence held insufficient to go to jury on question of undue influence in procurement of will.

M. HARGETT and T. W. CUMMINS for appellants.

MATT J. HENNESSEY for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

Mary Jane Bradford died in January, 1925. She was seventy-nine years old. She left surviving her, as her sole heirs at law, her two brothers; George W. Kinney, who was eighty-two years of age and Thos. J. Kinney, who was eighty-five years of age. She owned at her death ten or twelve acres of land in Brooksville, Kentucky, $600.00 in money and some household and kitchen furniture. Her will is in these words:

"I, Mary J. Bradford of Brooksville, Bracken county, Ky., being of sound mind and memory, realizing the uncertainties of life and desiring to make disposition of my worldy affairs while I have accompanied mental capacity so to do, do hereby make and publish this my last will and testament, hereby revoking all other wills heretofore by me made.

"Item 1. I will and direct that after my decease that all my funeral expenses be first paid out of my estate by my executors hereinafter named.

"Item 2. After payments of the above named expense I will and devise to my beloved brother,

George W. Kinney, five acres of land. (Here follows boundary of land.)

"Item 3. I will and devise all the remaining real estate or residue of which I may die seized and possessed, being about five or six acres after cutting off passway mentioned in item 2, including house in which I now live and all other outbuildings adjoining same to my beloved brother, Thomas J. Kinney for and during his natural life to use and enjoy as he may deem proper.

"Item 4. After the death of my brother, Thos. Kinney, I devise and bequeath the residue of my real estate devised to my brother Thos. J. Kinney to my niece, Carrie M. Yates, absolutely without entailment.

"Item 5. I hereby nominate and appoint my brothers Thos. J. Kinney and George W. Kinney my executors of this my last will and testament and desire and request that the court require no bond or bonds of them as such executors.

"In witness whereof I have hereunto set my hand this 13th day of September, 1922.

"(Signed) Mary J. Bradford."

Carrie M. Yates is a daughter of Thos. J. Kinney. The will was probated in the county court. George W. Kinney prosecuted an appeal to the circuit court. There was no evidence of want of capacity. The court submitted to the jury the question of undue influence. The jury found against the will. The propounders appeal, insisting that the court should have instructed the jury peremptorily to find for the will and that the verdict of the jury is palpably against the evidence.

Thos. J. Kinney lived in Indianapolis; George W. Kinney lived in Bracken county near the testatrix. Thos. Kinney had a son, Louis, and some grandchildren who were the children of a deceased son, Matt, who had died in very good circumstances. George W. Kinney had several sons and two daughters. In July, 1922, as Thos. Kinney was leaving his sister's home, she requested him to tell Mr. J. E. Poage that she wanted him to stop there as he passed her house on going home. Thos. Kinney went on home. In a day or two Poage did go to see Mrs. Bradford and she told him she wanted him to write her will. He took down her instructions and told her that he would write it out later. He wrote the will a few days

after this and gave it to her, but nothing further occurred until September 13, 1922, when she saw Poage again and asked him to come to the house and bring W. T. Breeze with him to witness the will. Breeze and Poage were her neighbors and her friends. They came and the will was duly executed and left with her. Thos. Kinney was in Indianapolis and had no part in the transaction after he delivered the message to Poage as he was going·home in July. Thus things ran along until November 24, 1924, when the old lady was paralyzed and by phone Thos. Kinney was called to see her. He came and he says that she then asked him to take the paper to Poage for safekeeping, which he did. She continued to grow worse after this and died early in January. The witnesses for the contestant, as well as those for the will, all agree in saying that she was a woman of good mind. She was a woman of culture and a strong character, who had decided convictions of her own. This is undisputed.

The testatrix was the widow of S. W. Bradford, who died some years before, making her his sole devisee, as they had no children. After her husband's death the estate turned out to be much involved and a litigation ensued, conducted by Y. Alexander, etc., to take all the property away from his widow. Her brother, Thos. Kinney, came to his sister's assistance in this litigation and about 1908 secured·a settlement of it by which the title to the land that she owned at her death was quieted to her. George W. Kinney did not help her in this matter, and from this time on she looked to Thos. Kinney for help in her business matters. She would write for him to come whenever she needed him, and he would come to make contracts or settlements with tenants or dispose of crops or any other matters that she had on hand.

George W. Kinney testified that the five acres devised to him by the will was not worth over $200.00, but he admits his brother offered him a thousand dollars for it and he declined to take it. He says he frequently went to see his sister and she always treated him friendly, but in the last few years of her life he noticed a change in her manner toward him, and she many times told him that he was trying to beat her out of her home; that she said she wanted her burial expenses and debts taken out and then wanted everything divided equally between her two brothers; that she told him this dozens of times and continued to tell him this after September 13, 1922; that he

had nothing in the world to do with any attempt to beat her out of her home; that he noticed no change in the condition of her mind; she was of sound mind, but she wouldn't let him have anything to do with her business and always got Thomas to attend to it. He said that after her death he asked Thomas if she had left a will and he said he didn't know, that maybe there was a will; that Thomas insisted on buying a cheap coffin to bury her in, and after the will was opened Thomas said the reason the will was made that way was that he wanted to keep Louis and his children and Matt's children out of the estate, Louis being Thomas' son and Matt's children being his grandchildren.

He also testified that Thomas said that the personal property was to be divided equally between his daughter Carrie Yates and the two daughters of George Kinney, and that nothing was said about this in the will as that had seen settled before.

Miss Lide Kinney, the daughter of George Kinney. testified that after Mrs. Bradford was taken sick she telephoned for Thos. Kinney, and when he came he said they needn't be running up a doctor's bill; that after he said this Mrs. Bradford settled with the doctor and told him he needn't come any more; but she said when she paid the doctor that it did her good to see him and that she hated to do it as it did her good to see him come in. She also testified that one time several years ago, she said to her, "Your pa and uncle Tom will have it equal after I am gone," in speaking of what she wanted done with her property after her death. She also testified that Thos. Kinney took the will to Mr. Poage, and after he took it he told Mrs. Bradford about it and that he said after her death that she wanted the personal property in the house divided between her three nieces, and that the property was left to Mrs. Yates after his death to cut out his son and his grandchildren. She also testified that after Mrs. Bradford was taken sick she wanted to get some money out of the bank and had Silas, her brother, bring the satchel; that she looked for her check book. The witness picked it up two or three times and gave it to her, and she said that was not what she wanted, and she then sent Silas back to bring her some other papers, and she kept trying to find something else.

Edna Moyer, another daughter of George Kinney, testified that in her last sickness the testatrix said when

her father left, "Why can't he be that nice all the time? They didn't care out at his house if I had lost my home." I asked her who said that and she said "Thomas." I said, "Do you believe that?" and she said, "I shouldn't have been so foolish." She also testified that she said during that sickness that she didn't want any trouble over her estate because she wanted it equally divided.

Silas Kinney, a son of George W. Kinney, testified that Thos. Kinney looked after her business, and when he said a house was not worth roofing she was satisfied; that she said that Thos. Kinney had told her that his father would talk so bad on the streets that people would walk away and leave him.

Thomas Kinney, a son of George Kinney, testified to her using the same language about what Thos. Kinney had said about his father, but said this was four or five years ago. He also said that she once said in his presence that she wanted her estate divided between his father and uncle Tom, but this was long before the date of the will.

The contestants also introduced proof showing that George W. Kinney had not talked ugly on the streets, as the old lady said that Thomas told her he had done. But there was no evidence at all of mental incapacity. The witnesses all agree that her mind was right and that she was a woman of strong will.

The question presented is, do these facts warrant the submission of the case to the jury or are they sufficient to sustain a verdict, the testimony of Thos. Kinney and the other witnesses being to the effect that the will was the free act of Mrs. Bradford and not the result of any influence of Thos. Kinney?

If it is conceded that the five or six acres devised to Thos. Kinney for life are worth $4,000.00 and the five acres devised to George Kinney are worth $1,000.00, the fact is that the latter gets as much under the will as the former, for he was eighty-five years old and his life estate is worth less than $1,000.00. Carrie Yates is the real beneficiary of this property, for she gets it in fee, subject to her father's life estate. She lived in Indianapolis and is in no manner connected with the making of the will. Before her marriage for some years she ran the store of S. W. Bradford. Her aunt was much attached to her. After her husband's death she supported herself and daughter by her own exertions. She had no home except

that she bought a small place which she was laboring to pay for on the installment plan.   Under such circumstances her aunt may not unnaturally have conceived the idea of securing a home for life to her brother, who had served her so faithfully, and after his death to this widowed niece, who had also served her well and to whom she was tenderly attached.   Such was the will she dictated to Mr. Poage when none of these parties was nearer than Indianapolis and when she was of good mind, a woman of culture, a great reader and not easily influenced.   Such was the will which she kept in possession for two months, and then, without the suggestion of anybody, she called in two of her friends to witness the paper, telling them it was her will.   She kept the paper in her house in the full possession of her faculties for more than two years after this and then sent it to Mr. Poage for safe-keeping.   She never exhibited any intention to change it, so far as appears; for the testimony as to her looking for some other paper when she wanted to draw some money out of the bank is too vague to be given any weight.

"We have frequently written that it is not sufficient to show that there was an opportunity to exercise undue influence, or that there was a possibility that it was exercised, but some evidence must be adduced showing that such influence was actually exercised.  Crump v. Chenault, 154 Ky. 187, 156 S. W. 1053; Childers' Exor. v. Cartwright, 136 Ky. 505, 124 S. W. 804.  And by evidence is meant something of substance and relevant consequence, and not vague, uncertain or irrelevant matter not carrying the quality of proof, or having fitness to induce conviction.   Clark v. Young's Extx., 146 Ky. 377." Brent v. Fleming, 165 Ky. 358.

"It may be conceded that where the testator is mentally deficient, or is easily controlled, very slight circumstances, in addition to inequality in the distribution of his estate among the natural objects of his bounty, will be sufficient to establish undue influence. But no such case is here presented.   Every witness and every circumstance of the case show that the testator was a strong-minded, self-willed man, and not easily moved by any one." Brent v. Fleming, 165 Ky. 359.

In this case the proof by all the witnesses is that the testatrix was a woman of unusual mental powers and strong will.

"Statutes conferring the right upon one to make a will disposing of his property after his death extends to the citizen a most valuable privilege, and his right to exercise it has been most vigilantly guarded by the courts. Juries should not be permitted, upon mere remote and speculative evidence having but little, if any, probative force, to take away that privilege because, forsooth, the terms of the will might not be in accord with their notions of justice and propriety. The law accords to every person the right to dispose of his property by will, if at the time he executed it he has sufficient mind to know his property, the objects of his bounty and his duties to them, and to dispose of his bounty according to a fixed purpose." Langford's Executor v. Miles, 189 Ky. 521.

Mental incapacity and undue influence go hand in hand, for the want of capacity opens the door for the exercise of undue influence. But where the mental capacity is unimpaired the will of a person of strong convictions can not be set aside upon such proof of undue influence as we have here. The proof for the contestant is to the effect that Thos. Kinney had poisoned the mind of his sister against his brother George, but the will does not evidence that it was the result of such influence. Thos. Kinney gets no more under the will than his brother. The paper on its face names them both as her beloved brothers and they are both made executors of the will without bond. The real thing that George Kinney complains of is the devise to Carrie Yates. But this devise may as reasonably have resulted from the desire of the old lady to provide for her widowed niece as from any other cause; there is not a line in the record connecting Thos. Kinney directly with the devise to his daughter. It does not appear that he knew for a long time that it had been made. The testatrix not only dictated the will herself in the absence of any of the parties in interest, but she executed it months afterwards, well understanding its provisions, and more than two years after this had the will sent to Poage for safekeeping. The facts bring the case within

the rule laid down in Redeman v. Ruff, 196 Ky. 476, which is in these words:

"The solemn paper itself, executed by the testatrix shortly before her death and at a time when she realized what she was doing and appreciated her duty to her children, is not to be overcome by mere shadows of proof or by slight proof. Such papers should be sustained in every instance where the testatrix had mind sufficient to know the objects of her bounty and her duty to them and to dispose of her property according to a fixed purpose of her own. The evidence contained in the record was not sufficient to sustain the verdict finding the paper not to be the last will and testament of Francis Redeman. The verdict in fact is flagrantly against the weight of the evidence, and for these reasons the judgment must be reversed."

If on another trial the evidence is substantially the same the court will peremptorily instruct the jury to find the paper to be the will of the testatrix.

Judgment reversed and cause remanded for a new trial.