## Applegate's Administrator v. Jones, et ux.

(Decided May 24, 1927.)

### Appeal from Lewis Circuit Court.

1. Deeds.—Evidence of opportunity of those with whom deceased lived unduly to have influenced him in disposition of property is not sufficient to set aside deed made in consideration of past and future care, without proof that undue influence was actually exercised.

2. Deeds.—To set aside deed made by an aged man to those with whom he lived in consideration of past and future care, evidence of undue influence must be substantial and not vague, uncertain, or irrelevant.

3. Deeds.—As respects claim of undue influence, fact that deceased did not, during 10-month interval before death, express regret over conveyance given by him to those with whom he lived in consideration of past services and care until his death, was circumstance in favor of the deed's validity.

4. Deeds.—Deed by man 75 years of age, who suffered from cancer, conveying $2,000.00 farm to those with whom he lived in consideration of past services and care to be rendered until death, held not invalid on ground of lack of capacity, in absence of substantial

evidence of incapacity and under evidence that deceased did not
attempt to dispose of $4,000.00 in cash.

5.   Appeal and Error.—The chancellor is in a better position to judge
     the testimony of witnesses than the Court of Appeals, and his find-
     ings must be given weight on appeal.

M. J. HENNESSEY, B. S. GRANNIS and HARVEY PARKER, JR.,
for appellants.

ALLEN D. COLE, JOHN P. McCARTNEY and R. D. WILSON for
appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Stephen Applegate died on the 11th day of May,
1925, aged 82 years. He was blind and afflicted with a
malignant cancer of the face. For about 10 years he had
made his home with the appellees, C. F. Jones and wife.
This appears to have been a matter of his own free
choice. He had money and was able to pay his own way,
and the proof discloses that he did pay Mr. and Mrs.
Jones for their care and attention to him, although there
is proof in the record that he stated that he had not paid
them half enough. He was unmarried but he had numer-
ous collateral kindred. They visited him occasionally,
and occasionally they borrowed money from him, and.
while the old man was willing to loan them money, he was
rather scrupulous about their repaying him with interest.
Some time after he went to live with the appellees, he
purchased a farm, which is the same now in controversy,
and thereafter he lived on this farm with the appellees.

On the 8th day of July, 1924, he executed a deed of
conveyance to the appellees for the farm in controversy,
and the consideration was stated as $1 paid in cash and
"to remunerate him for his kind care in ministering to
me in the past and the said party of the second part to
continue his care and ministration until my death."

Prior to the execution of this deed, there had been
some talk among his numerous relatives about taking his
property out of his hands. He was indignant about these
rumors. It is in proof that he made the deed because he
thought it would be more difficult to set aside a deed than
it would a will. The appellee C. F. Jones had the deed
prepared in accordance with the instructions of Stephen
Applegate. He not only executed this deed of convey-
ance, but requested that A. T. Warder be appointed his
committee to have charge of his personal property. Im-
mediately after the execution of the deed, his relatives

had two doctors to visit him to ascertain if he was competent to execute the deed. His relatives were considerably agitated about what the old man had done. After his death, they instituted this action to set the deed aside on the grounds that it was obtained by undue influence, and that he did not have mental capacity sufficient to understand the nature of his act when he executed it. The proof shows that the land is worth about $2,000, and it is urged that this was too much for appellees to receive for caring for the old man during the remaining ten months of his life after the execution of the deed.

Nearly all the witnesses who testified for the appellants were relatives. The evidence of the witnesses for appellants on the question of undue influence show nothing more than an opportunity on the part of the appellees to exercise undue influence. This is not sufficient on that branch of the case to justify any court in holding that the undue influence which might have been exercised was actually exercised. It is never sufficient in such case to undo what the decedent did on the grounds of undue influence if the testimony shows no more than that there were opportunities that decedent might have been unduly influenced, or that it was possible that such influence was exercised. It is always necessary in such a case to adduce evidence showing that such influence was actually exercised. Crump et al. v. Chenault, 154 Ky. 187, 156 S. W. 1053; Childers' Executrix v. Cartwright, 136 Ky. 498, 124 S. W. 804. Evidence of undue influence must be substantial and not vague, uncertain, or irrelevant matter which does not carry the quality of proof or is not of such a character as to induce conviction. Clark et al. v. Young's Ex'x, 146 Ky. 377, 142 S. W. 1032; Brent v. Fleming, 165 Ky. 356, 176 S. W. 1134. There is nothing in this record to show that Stephen Applegate was easily controlled or that it was easy to get him to part with his money, but the evidence is rather to the contrary. Stephen Applegate executed this deed ten months before his death, and there is no evidence that he at any time expressed a desire thereafter to make any change in the disposition of his property. It is true he was old, but the testimony does not show that he was unable to express his wishes or that he did not know what he was doing, and the fact that he showed no indication that he regretted what he had done is a circumstance in favor of the validity of the transaction. Brad-

ford's Adm'r et al. v. Kinney, 216 Ky. 348, 287 S. W. 921.

The evidence on the ground of mental incapacity is no more satisfactory than the evidence on undue influence. The old man transacted his business affairs until the time that he executed this deed. Some of the witnesses for appellant say that in their judgment he was too old to execute the deed or to transact his business, and in their judgment he did not have sufficient mental capacity to know the nature of his act. Some of the doctors express a doubt as to his mental capacity. Other witnesses say that they do not believe that any man who has passed the age of 75 years is competent to attend to his own business. They must be in error on this point. If literature should be deprived of the rich contributions of those past the age of 75 years, much that has ennobled, inspired, and enlightened the world since civilization had beginning would be blotted out; if from the events of history their part should be subtracted, much that has set the world forward would be lost; if their discoveries in science should be omitted from the sum total of human knowledge, there would be darkness where there is now light; if from systems of jurisprudence principles of law established by them should be eliminated, there would be imperfection where there is now perfection; and if from the governments of the world their work as statesmen should be obliterated, there would be weakness where there is now strength. Old men have wisdom that the young know not of. Let it not be written by this court, therefore, that age always dries up the fountains of the mind and destroys the Godlike attributes of man.

Stephen Applegate had the right to provide for comfort and attention during his passing days between the time his helplessness began and the time of his departure. He knew that, in his old and blind condition, suffering as he was from a disease that made him an unpleasant, subject of attention, looking after him was no easy task. He said in the deed which he executed that a part of the consideration was for past services, and that the balance of the consideration was to make secure his future. He was not trying to deprive his relatives of his estate, as the evidence shows that he had more than $4,000 in cash which he did not attempt to dispose of.

The chancellor gave consideration to the testimony of all of the witnesses and the circumstances. He is closer to them than this court and therefore in a better

position to judge their testimony. He upheld the deed, and weight must be given to his findings. Let what the old man did stand undisturbed.

The judgment is affirmed