## Tunks et al. v. Vincent et al.

(Decided December 9, 1931.)

380

G. DUNCAN MILLIKEN for appellants.

B. M. VINCENT for appellees.

Opinion of the Court by Judge Willis—Reversing.

Daniel Keith died intestate at the age of 84 years. He was survived by two children and several grandchildren, four of whom were the descendants of his two deceased children. The wife of Daniel Keith had died on August 6, 1925, and eight days after her death, he executed and delivered a deed to his daughter, Maude Keith Tunks, conveying to her two town lots comprising all of his land. The lots were worth at the time approximately $2,000, although there is evidence of some depreciation subsequently. The consideration recited in the deed was "One dollar cash in hand paid and love and kindness, and affection, and the further consideration that said second party is to take care of the said first party during his natural life." Daniel Keith was the first party and Maude Keith Tunks was the second party named in the deed.

Daniel Keith lived until April 5, 1928, and from the time the deed was delivered until the grantor's death, the grantee fully performed the obligation assumed by her in accepting the deed. On September 22, 1928, Goldie Richie Vincent, the sole heir of one of Daniel Keith's deceased children, and her husband, together with the three children of another deceased child of Daniel Keith, and their spouses, instituted an action against Maude Keith Tunks and her sister and their husbands, to set aside the deed made to Mrs. Tunks by her father. The right to relief was predicated upon the

grounds of alleged mental incapacity of Daniel Keith, and undue influence exercised upon him by the grantee and her husband. The circuit court granted the relief sought, and Maude Keith Tunks has prosecuted an appeal.

The judgment of the chancellor was rested upon a finding that both grounds upon which the deed was challenged were sustained. Mr. Keith was a Union veteran and received a pension of $50 a month until 1922, at which time it was increased to $72 per month. Later, and for the last two or three years of his life, he required a personal attendant at all times, and his pension was then increased to $90 per month. He lived with Mr. and Mrs. Tunks before and after the deed was made, and contributed towards the payment of the household and living expenses. It is argued by the appellees that he paid most of the living expenses and that the benefits received by Mr. and Mrs. Tunks were worth as much as the services rendered by them.

Upon the question of mental incapacity, the plaintiffs introduced several witnesses who expressed the opinion that Daniel Keith was not competent to make a contract or deed. They do not detail facts, acts, or words tending to sustain the opinion, except the fact that the grantor was a very old man and in feeble health. It was thought that he did not realize the seriousness of his wife's condition, because on the night of her death he was talking and laughing about his sweethearts when he was young. Other witnesses testified that he did not recognize them on certain occasions, although they were well acquainted with him. Reference is made to his purchase of the property in 1920, when he made an offer of $2,200 for the property without dickering for a better price. It appears, however, that he desired the property and the owner was asking $2,500 for it. The offer of $2,-200 was made to the wife of the owner in the absence of the latter, and it was later accepted and the deal concluded. When the deed in question was made, Mr. Keith sent for two physicians living some distance from him, and requested them to certify that he was competent to make a deed. The physicians did make such an affidavit, and it appears on the deed between the signature and the certificate. It is said that this circumstance affords evidence of incompetency, because it is unusual for a person to impugn his own sanity by obtaining in advance evidence to sustain it. Mr. Keith explained his wish to

make the deed, that his capacity to do so had been questioned, and he desired it to be established beyond dispute. The old gentleman thought his own feeling of competency would be vindicated beyond cavil by the opinion of the experts. The doctors were not intimate friends, or interested in the matter, and both of them testified strongly to the capacity and alertness of the old gentleman. The facts related by them are cogent and convincing. The notary public who wrote the deed testified that he was requested by Mr. Keith to write it. Mr. Keith told him how he desired to have the deed made. The deed was read over to him and he understood very clearly what he wished to do and was doing. Moreover, when the assessor came around, Mr. Keith declined to list the property, stating that he had disposed of it and that the assessor should see the owner. The chancellor attached much weight to an affidavit of Dr. Simmons, made in 1921, to the effect that Daniel Keith, "by reason of age, physical and mental disabilities," was so nearly helpless as to require the regular attendance of another person. Dr. Simmons, although a witness in the case, did not testify that Mr. Keith was not entirely competent to make the deed. His affidavit was not substantive evidence in this case, and it was not inconsistent with a finding of capacity to make a deed.

There was practically no evidence of any probative value that Mr. Keith was incompetent to make a deed. Moran's Ex.'r v. Moran, 233 Ky. 526, 26 S. W. (2d) 565. Second appeal 238 Ky. 403, 38 S. W. (2d) 207. On the other hand the proof tending to show such capacity was very strong, and came from physicians as well as from friends and neighbors.

On the question of undue influence, the chancellor's conclusion was rested upon the fact that the law looks with suspicion upon the transaction of persons who are old and infirm which result in a conveyance of practically all of their property to one sustaining a confidential relation to them. It is said that Virgil Tunks, the husband of the grantee, went to see the notary public and the doctors, and also went to see a lawyer to prepare a statement to be mentioned later. It is shown, however, that these acts were at the direction of Mr. Keith, and when the parties sent for arrived, Mr. Keith explained his reasons for sending for them. Some months after the deed was executed, Mr. Keith had his son-in-law to

secure an attorney to prepare a statement confirming what he had done, certifying his capacity to execute the transaction, and his entire satisfaction with what he had done. Mr. Tunks did as directed and the certificate and statement were executed. It is said that this activity on the part of Mr. Tunks was evidence of undue influence, and of an effort to manufacture evidence in favor of his wife. The witnesses testified that Mr. Keith was in his right mind and what was done was in obedience to his request. His action was prompted by information he had obtained that his grandchildren were questioning his capacity to make the deed, and he wished to subvert any action they might take. It is admitted that Mrs. Vincent had consulted an attorney for the purpose of attacking the transaction in the lifetime of Mr. Keith. But they stood by and permitted the contract to be carried out by the grantee to the satisfaction of the grantor.

The circuit judge cited in support of his opinion certain cases decided by this court, and other cases have been cited in brief. In Smith v. Snowden, 96 Ky. 32, 27 S. W. 855, 16 Ky. Law Rep. 353, a deed was set aside upon the ground of undue influence. In that case a false recital was found in the deed respecting the consideration, and the grantee in the deed, who sustained a confidential relation to the grantor, failed to rebut the presumption of unfairness that arose from the situation in which the parties stood. Doubtless that decision was sound upon the facts related in the opinion, and no question thereof has been made.

In Shields v. Burge, 171 Ky. 149, 188 S. W. 321, a similar situation was presented and the transferee of the property failed to meet the burden resting upon her to manifest the fairness of the transaction.

In Davidson v. Davidson, 180 Ky. 190, 202 S. W. 493, the deed recited a consideration of future support, but, as the court carefully pointed out, it was practically nothing in view of the fact that the grantor was upon her death bed at the time.

In Willoughby v. Reynolds, 182 Ky. 1, 205 S. W. 947, the deed was executed without consideration other than love and affection and the grantee failed to show that the transaction was fair, free from fraud, or undue influence.

Gregg v. Hedges' Guardian et al., 227 Ky. 268, 12 S. W. (2d) 854, and Miller v. Taylor, 165 Ky. 463, 177 S. W. 247, both involved death bed deeds, executed with-

out consideration, under circumstances rebutting all semblance of fairness.

In Herzog v. Gipson, 170 Ky. 325, 185 S. W. 1119, a deed was canceled upon the ground of mental incapacity and undue influence clearly established by the evidence.

In Bradley v. Bradley, 91 S. W. 1143, 29 Ky. Law Rep. 195, a father brought a suit to cancel a deed to his son which had been given for a consideration wholly inadequate.

Such are the authorities advanced in support of the judgment, but we are convinced the case is ruled by another and distinct line of decisions.

In Sykes v. Hurd, 195 Ky. 560, 242 S. W. 853, it was held that an agreement to support and care for one for the rest of his life is a valid consideration for the conveyance of real estate, and when the consideration has been faithfully performed, the contract will be upheld. The deed in that case was executed by a man 76 years of age, and the grantees assumed a number of obligations to be performed for the grantor. It was held that the evidence was not sufficient to justify a cancellation of the deed upon the grounds of mental incapacity or undue influence.

In a number of other cases this court has upheld deeds made by aged persons in consideration of a home and future care. Petty v. Pace, 207 Ky. 592, 269 S. W. 713; Applegate's Adm'r v. Jones, 220 Ky. 205, 294 S. W. 1032, 1033; Hensley v. Hensley, 230 Ky. 575, 20 S. W. (2d) 444; Hall v. Drake, 232 Ky. 127, 22 S. W. (2d) 568; Parsley v. Parsley, 233 Ky. 42, 24 S. W. (2d) 931; Dixon v. Dixon, 236 Ky. 608, 33 S. W. (2d) 611; Schenk v. Schenk, 240 Ky. 237, 41 S. W. (2d) 1102. Yankay v. Clark, 244 Ky. 346, 6 S. W. (2d) 274. The fairness of this transaction is beyond question. No one could tell how long the grantor would live, and the probable burden assumed by the grantee is not to be measured by what subsequently transpired, but by the situation at the time of the transaction. If an old person could not make an arrangement such as was made in this case, his property might be entirely useless to him, and he might be unable to procure the care and comforts to which he was entitled. In this case the physicians testified to the mental capacity of the grantor, and a number of friends and

neighbors did likewise. No fact or circumstance is detailed sufficient to overthrow, or even to impair, the conclusion to be derived from the testimony. Appellate's Adm'r v. Jones, supra. The grantee in the deed loyally and faithfully discharged her obligation. She showed affirmatively that the transaction was fair and reasonable, and that it was proposed and persistently pursued by the old gentleman himself, without suggestion from any one. Indeed, Mr. Keith had desired to make the deed before his wife died, but she preferred to keep the property as it stood, and he did not make the deed until after her death. The circumstance that he desired to bury his wife at one place, and was persuaded by his daughter to change his mind, is fully explained. Mrs. Keith had requested before her death that she be buried at the place selected, and when Mr. Keith was advised of that he assented because of her wish. We cannot distinguish this case on its facts from the other cases where old people have made deeds in consideration of care, service and support. The evidence of incapacity and undue influence falls far short of proving the existence of either fact. The evidence to the contrary is clear, cogent, and convincing. This case falls within the reasoning and express language of the cases last mentioned. James v. Cullins, 214 Ky. 179, 282 S. W. 1106.

It is urged that the chancellor found against the deed and that his finding will not be disturbed when it is based upon conflicting evidence. It is true we repose great confidence in the conclusion of the chancellor derived from conflicting testimony, and when the mind is left in doubt as to the truth such a judgment is not disturbed. But it is nevertheless the province of this court to read the record for itself and to determine the judgment that ought to be entered. If a clear conviction results that the decision of the chancellor was erroneous, this court enters the judgment that should have been entered in the first place. Addison v. Wilson, 238 Ky. 143, 37 S. W. (2d) 7; Lewis v. Shell, 205 Ky. 624, 266 S. W. 254; Downing v. Whitlow, 211 Ky. 294, 277 S. W. 262; Walker v. Walker, 228 Ky. 357, 15 S. W. (2d) 298; Turner v. Hammock, 229 Ky. 836, 18 S. W. (2d) 285; Katz v. E. & J. Scott, 229 Ky. 738, 17 S. W. (2d) 1024; Ford v. Ford, 233 Ky. 673, 26 S. W. (2d) 551; Cassinelli v. Stacy, 238 Ky. 827, 38 S. W. (2d) 980. We are constrained to the conclusion that the chancellor erred in

386

canceling the deed. As Judge Logan said in the Appellate case, "Let what the old man did stand undisturbed."

The judgment is reversed for judgment in accordance with this opinion.