## Williams v. Shockey et al.

(Decided June 6, 1934.)

JOHN D. ATKINSON and T. T. COPE for appellant.
E. C. HYDEN for appellee.

706

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

In the year 1926, the appellant, Sallie Wells Williams, loaned to C. J. Little $2,500 for which he executed to her his note secured by mortgage on a lot in the town of Jackson, Ky.

In the fall of 1928, Mrs. Williams filed her suit in Breathitt circuit court to collect the note and foreclose the mortgage. No defense was made to the action, and she was awarded a judgment on the 23d day of March, 1929, for the full amount of her note and an order of sale of the mortgaged property. Mrs. Williams became the purchaser of the lot at the commissioner's sale for the price of $1,150, leaving the balance of the judgment unsatisfied. After the confirmation of the sale she procured an execution for the balance of her judgment, which execution was levied upon certain other lands of Little, referred to in this record as the Cedar Creek tract. However, while the case was pending on the note and mortgage foreclosure, in December, 1928, C. J. Little conveyed all his property, consisting of ten separate tracts or parcels, to J. A. Shockey, for the recited consideration "of the sum of $1.00 cash in hand paid and other good and bountiful consideration, well and truly paid and to be paid. * * *"

The appellee, J. A. Shockey, filed this suit in the Breathitt circuit court alleging that he was the owner of the land on which the execution was levied, and asked that appellant, Mrs. Williams, and the sheriff of Breathitt county be enjoined from selling said land under the execution and from further interfering with him in any way in the quiet and peaceful ownership and possession of said property and from taking any further steps under the execution toward selling the land.

Mrs. Williams filed her answer in which she denied that Shockey was then or ever was the owner of the land or the oil and gas or minerals thereunder or on same or any other interest therein. She further pleaded her judgment against C. J. Little which was credited with the sum of $1,150, the purchase price of the lot mortgaged to secure same, and that, while the suit was pending, "C. J. Little, in contemplation of fraud, and for the fraudulent purpose of avoiding the payment of her debt and judgment, conveyed to the plaintiff who is his nephew, the property described and claimed by him

under the aforesaid deed, for the sole purpose to defraud this defendant and to avoid the payment of her debt and judgment and for these reasons the said deed from C. J. Little to plaintiff, J. A. Shockey, to the land described in the petition under which he claims said property, is void." She denied plaintiff's right to an injunction or other relief asked in his petition, and asked that the deed from C. J. Little to Shockey be canceled on ground that it was a fraudulent conveyance and made for the purpose of avoiding payment of her debt.

The issues were made up and the evidence taken, whereupon the chancellor adjudged J. A. Shockey, plaintiff below, to be the owner of the land known as the Cedar Creek tract in Breathitt county, containing 615½ acres, tract No. 1, and tract No. 2 consisting of 10 acres, more or less, and granted the injunction prayed for in the petition. From that judgment Mrs. Williams prosecutes this appeal.

Appellant insists that the conveyances from Little to Shockey were fraudulent and made to hinder, delay, and cheat the creditors of Little.

The consideration recited in the deed from Little to Shockey being indefinite, Shockey sought to show the actual consideration paid and to be paid.

Shockey stated in his deposition that he agreed to pay a note of $200 indebtedness to the Hargis Bank & Trust Company, which Little owed to it, on which he had paid $100 on the principal and $10 interest, and that he had paid taxes on the land for the years 1927 and 1928, but that he still owed the last two years' taxes just preceding the date of his depositions. We note the following question and answer:

"Q. How much taxes in all have you paid for C. J. Little as payment on this property? A. Here it is summed up—$246.32 taxes."

It is not clearly shown whether he meant in the above answer that he had actually paid $246.32, or whether that sum included taxes due, but not actually paid. He further stated that he was to keep and care for Little his lifetime and pay his burial expenses and tombstone equal to his wife (Little's wife, who had predeceased him) in the sum of about $350. He stated that Little

was living with him at that time and had been for the past thirty-eight months, during which time he had boarded and cared for Little.

On cross-examination Shockey was asked about his knowledge of the various parcels of land deeded to him by Little, and he stated, in substance, that he was acquainted with a part of them, but admitted that he knew but little, if anything, about others. He admitted that he had never been on or seen a number of the tracts of land, and knew nothing about their value except what people had told him. He said he had leased the oil and gas and received one-fourth of the value of 710 acres. He attempts to fix the value of the mineral on some of this land at $1.50 to $2 per acre, basing his opinion upon information only, but said that the timber and surface was assessed at $5 per acre for taxes. He said that part of the land was cleared and worn-out hillside, while other parts were timbered.

The evidence conduces to show that the title to a portion of this land is questionable, and it is doubtful that C. J. Little or Shockey has title to part of it, but the proof is too indefinite to show what title Little actually had. However, Little conveyed the property to Shockey for a consideration and warranted the title thereto, and, in the present state of the record, we assume that he had title thereto, in the absence of satisfactory proof that he had no title.

Shockey denies that he knew anything about Little's indebtedness to Mrs. Williams, and stated that he purchased the property in good faith and considered the consideration paid and promised to be paid a fair and adequate price for the property.

C. J. Little, testifying for Shockey, stated that he had no one to care for him, and that he deeded his property to Shockey to care for him his lifetime and the further consideration that Shockey was to pay the back taxes and all future taxes on the property and a mortgage to the Hargis bank. Little's testimony as a whole was, in substance, about the same as Shockey relating to the value of the land conveyed to Shockey, and he also sought to disparage his title by stating that a portion of it was "wildcat land," and intimated that his title to a portion of the land was doubtful. He also denied that he made the conveyance to Shockey with any fraudulent intent and that same was in good faith

and the consideration paid and promised to be paid by Shockey was an adequate and fair price for the land. Little admitted that he knew at the time he conveyed the property to Shockey that Mrs. Williams had judgment against him in the Breathitt circuit court in the sum of $2,500 plus interest, but said he did not suppose that Shockey knew anything about the judgment except what he had told him. He does not state, however, what he told Shockey.

No other witnesses were introduced in behalf of Shockey, plaintiff below, and the testimony of Shockey and C. J. Little, in substance, as above stated, is the only evidence offered in behalf of plaintiff.

Mrs. Williams testified that Mr. Little first asked her for a loan of $1,000, for which amount she gave him a check. He then said that he needed or wanted $2,500, and asked her if she would let him have $1,500 more, and she gave him her check for that amount. Little said he had seven deeds to pieces of property, and that he would turn them over to her and she could hold them until the debt was paid, and that Mr. Hyden wrote an agreement to that effect. In the meantime he gave her the mortgage on the lot in Jackson as above indicated. She stated that he turned the deeds over to her together with the written agreement, and she took the deeds and the written agreement to the clerk's office and had the deeds recorded, for which she paid the clerk the sum of $14 (Little's deeds had not therefore been recorded), and filed the written agreement with the deeds in the clerk's office. Thereafter when she called on Little to have the mortgage made to the lot Little told her that he had the deeds there in his possession and refused to let her have them and said that she was well secured by the mortgage on the lot.

The delivery of the deeds to Mrs. Williams to hold as security for her loan in addition to the mortgage did not create a lien on the land, but this evidence is competent to show that Little knew or suspected that the value of the lot might not be sufficient to secure her and that she would expect to collect the deficit, if any, out of his other lands, and with this knowledge he made the conveyances to Shockey. This circumstance is competent evidence to be considered on the question of fraudulent intent on part of Little.

Kate S. Bohannon, a sister of Mrs. Williams, stated

that she was present at the time of the transactions between Mrs. Williams and C. J. Little, and that Mr. Hyden drew up the agreement that Mrs. Williams was to hold Little's deeds as above related by Mrs. Williams, and Little let Mrs. Williams take the deeds to the clerk's office to have them recorded, and, after Hyden left, Little said, "I think I ought to have my property," and she said to him, "You know it was agreed that she was to hold these deeds until she got her money," and Little said, "She is well secured," and told about how much he had refused for the lot. Mrs. Bohannon and Mrs. Williams both testified that they had made a search in the clerk's office for the written agreement which was filed with the deeds but they were unable to find it. The testimony of Mrs. Williams and Mrs. Bohannon respecting the deeds is uncontradicted.

It is argued for appellee, that it is not fraudulent for an old person to make a conveyance of his property in order to secure for himself the necessities of life in his old age, and to support this contention are cited Petty v. Pace, 207 Ky. 592, 269 S. W. 713; Applegate's Adm'r v. Jones, 220 Ky. 205, 294 S. W. 1032; Hensley v. Hensley, 230 Ky. 575, 20 S. W. (2d) 444; Hall v. Drake, 232 Ky. 127, 22 S. W. (2d) 568, and Tunks v. Vincent, 241 Ky. 384, 44 S. W. (2d) 282.

The facts disclosed in the opinions supra are not analogous to the facts in the case at bar. In the cases supra, the grantees in the deeds or devisees of the will had fully performed the contract, and, after the death of the grantor or devisor, other heirs or interested parties sought to set aside the deed or will on the grounds of fraud, undue influence, and mental incapacity. The question of debtor and creditor was not involved in those cases.

In the case at bar the conveyance is attacked on the grounds of fraud as to creditors and within the lifetime of the grantor and before the grantee had fully performed the contract. These facts distinguish the instant case from the line of cases relied on by appellee.

From the record before us it is difficult to ascertain the exact quantity, quality, or value of the property conveyed by C. J. Little to appellee, but it is reasonably clear that he conveyed several hundred acres of land to appellee at a time when he knew that he was indebted to appellant and the evidence conduces to show that

Little knew or suspected that the mortgaged lot would not produce a sum sufficient to satisfy appellant's judgment.

In Magic City Coal & Feed Co. v. Lewis, 164 Ky. 454, 175 S. W. 992, this court denominated the following as badges of fraud: (1) Fictitiousness of consideration and false statements and recitals as to the consideration in the conveyances; (2) inadequacy of consideration under some circumstances; (3) concealment of or failure to record the conveyance; (4) the insolvency or considerable indebtedness of the grantor; (5) the transfer of all the debtor's property.

Our conclusion is that the case at bar comes within the category of the above rules. C. J. Little owed considerable indebtedness and transferred all his property. As above indicated, the uncontradicted evidence of Mrs. Williams, appellant, and Mrs. Bohannon, relating to the pledge of C. J. Little's deeds as security additional to the mortgage on the lot, is amply sufficient to show that he knew or suspected that the lot was not or might not be sufficient to satisfy appellant's debt. Thereafter he got possession of these deeds and refused to surrender them to the appellant, and then conveyed all his property to appellee for an uncertain and indefinite consideration.

In the circumstances we are constrained to the conclusion that the conveyance of his property was fraudulent, and the chancellor erred in failing to cancel the deeds. Magic City Coal & Feed Co. v. Lewis, supra; Lillard v. McGee, 4 Bibb, 165; Kentucky Statutes, secs. 1906, 1907; Thomas et al. v. Aldridge, 241 Ky. 1, 43 S. W. (2d) 179; Wyan et al. v. Raisin Monumental Co., 242 Ky. 431, 48 S. W. (2d) 1050; Oldham's Adm'x v. Oldham's Adm'x, 141 Ky. 526, 133 S. W. 232; Hawkins v. Moffitt, 10 B. Mon. 81.

However, the evidence respecting the knowledge of Shockey as to the fraudulent intent of C. J. Little or that he (Shockey) was a party to the fraud is not such as to warrant us to find that he was a party to the fraud, and therefore he is entitled to so much of the consideration as he, in good faith, parted with previous to the time of the levy of the execution upon the land. The levy of this execution on the land was sufficient to notify or warn him of the fraudulent transaction, and he will not be entitled to recover any consideration he

may have paid since that time. J. B. Colt Co. v. Brown, 242 Ky. 523, 46 S. W. (2d) 1074.

Upon a return of the case, each party may be permitted to file such pleadings and take such proof as may be necessary to ascertain what consideration Shockey paid before the levy of the execution on the land, and, to secure the payment of such sum, he may have a lien against the land, and the residue of the land, or so much thereof as may be necessary, subjected to the payment of appellant's judgment.

For reasons indicated, the judgment is reversed, and remanded, with directions to cancel and set aside the deed and for further proceedings consistent with this opinion.