## Deskins et al. v. Deskins.

March 26, 1943.

Burke & Sanders for appellants.

Stratton & Stephenson for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Reversing.

Troy Deskins is the husband of his co-appellant and is the son of Tom Deskins, the appellee. On September 8, 1931, appellee loaned appellant the sum of $4,000 evidenced by two notes for $2,000 each, secured by mortgages on various pieces of real estate owned by the debtor. In the year 1937, payments were made in the aggregate amount of $1,125.

The father and son had been great companions throughout the years, had common business interests, and each had the full confidence of the other. Appellee had been married three times. Death caused the cessation of the first two unions, while divorce separated the

bonds of the third. Though there were other children it seems that Troy was closer to his father than they. He was the oldest son of the first marriage. His mother died in January, 1917. After her death Troy remained in the home, cooking for, and taking care of, his younger brothers and sisters. He married a short time before entering the armed forces of the United States in the first World War. His father entered into his second marriage in the spring of 1919. After Troy returned from the army, he received his younger brother and sister into his home and reared them throughout their infancy. Mr. Deskins enjoyed good health until he was almost 70 years of age, but in 1937, he became ill, and, in the spring of that year, he was confined for several weeks in a hospital. After he was discharged from the hospital he consulted his attorney, J. A. Runyon, concerning a division of his estate between some of his children, and directed Mr. Runyon to prepare deeds conveying certain lands to some of them. He executed deeds to four of his children and explained to his attorney that a fifth son had already received his part of the estate. He made no mention of another son, nor of two daughters. He explained to Mr. Runyon that he deeded Troy less land than the others because he intended to relieve Troy of the payment of the debt herein sued on, and, in pursuance of that thought, directed Mr. Runyon to prepare a deed of release for the debt and a cancellation of the mortgage. The deeds of conveyance and the deed of release were prepared, executed, acknowledged, and placed in the keeping of the attorney for approximately 6 months, at which time they were repossessed by Mr. Deskins, and were kept by him in his home on John's Creek until February, 1939. In July, 1938, Mr. Deskins sustained a broken arm in an automobile collision and for a few days was confined in a hospital in Pikeville. The doctor in charge of the case reported to Troy that in his opinion, he could give Mr. Deskins no relief and suggested that he be taken to an orthopedic surgeon in Huntington, West Virginia. Troy took him to the surgeon suggested, who treated the patient throughout an undisclosed period of time. He was then taken to Troy's home on Pond Creek where he remained until he recovered. While at his son's home he fell and fractured several ribs. In all, he spent approximately two-thirds of his time at Troy's home in the years 1937, 1938, and 1939. In the early part of the year 1939, Mr. Deskins

was quite ill, and Troy and his wife vacated their bedroom on the first floor and took one on the second floor in order to render their father more comfortable. They employed a neighbor, Stafford Maynard, to care for him during the night. One night, in anticipation of death, Mr. Deskins requested the attendant to call Troy to his bedside. When Troy arrived, his father asked him to go to John's Creek and procure the deeds we have mentioned. The following morning Troy obtained the documents and delivered them to his father. There is no contradiction of the testimony establishing the facts recited above, but the evidence as to what occurred thereafter is in sharp conflict. Troy testified that when he answered the summons of his father and was directed to go after the deeds, his father told him that there were two deeds in the ''bunch'' for him, and he was to ''take them.'' He testified that he was further instructed that in the event of Mr. Deskins' death, Troy was to deliver the other deeds to the ''youngins;'' but, if death did not ensue, he was to keep the papers until further directed. Troy's daughter testified that Mr. Deskins told him to go after the deeds, that there were two deeds in the ''bunch'' for him: one was a deed of release of the debt and the other was for a tract of land. She likewise testified that her grandfather told her father that the deeds were to be his part of her grandfather's estate, in consideration of his having been so willing to help the rest of the family and his kindness to her grandfather during his illness. Stafford Maynard testified that Mr. Deskins told Troy to get the papers, that there were two in the ''bunch'' for him, that he wanted him to have them as his part of the estate, and directed him to deliver the others to the other children. Mr. Deskins denied this testimony. Troy placed the papers in a trunk and, on his next visit to Pikeville, had the deed of release and the deed of conveyance which was executed to him recorded in the office of the clerk of the Pike county court. A few days later Mr. Deskins called for and received the papers. He testified that at that time he did not notice that they had been recorded because, as he later discovered, the memorandum of recordation had been erased from the instruments. The deed of conveyance to Troy was for land referred to in the record as the Craft tract. Some time later Mr. Deskins leased the oil and gas under the Craft tract. The abstractor for the lessee discovered that the deed to Troy had been recorded and informed

Mr. Deskins of this fact. Mr. Deskins testified that that was the first information he had that Troy had done anything with the deed other than to keep it in the trunk for safekeeping. He requested Troy to reconvey the land, which was eventually done. The father then asked Troy to execute a new mortgage to secure the debt for which the deed of release was executed and upon his failure to comply with that request, this suit was instituted.

The petition contains the usual averments of an action upon a promissory note secured by a mortgage. The answer admitted the execution and delivery of the notes and mortgage, but alleged that appellee made a gift of the indebtedness to the appellant by surrendering the notes and delivering the deed of release, expressly acknowledging satisfaction of the debt and releasing the mortgage lien which secured it. A reply denied the delivery except for the purpose of safekeeping, and alleged that the placing of the release in the hands of appellant was not for the purpose of cancelling the debt. Although the answer alleged the surrender of the notes, the evidence shows conclusively that such surrender was not made; and, although the answer alleged and the deed of release recited satisfaction of the debt, the evidence conclusively shows the debt not to have been satisfied.

The case was tried in equity resulting in a decision by the chancellor that the delivery was made for the purpose of safekeeping and not for the purpose of then conveying the property or cancelling the debt. Judgment was entered for the face value of the notes with interest thereon subject to the credits aggregating $1,125, representing payments made in the year 1937.

The correctness of that decision is the only question for our determination; and under the rule applicable in equity cases, unless the evidence raises more than a doubt in our minds as to its correctness, the judgment will not be disturbed. Tunks v. Vincent, 241 Ky. 379, 44 S. W. (2d) 282.

The sole insistence of appellants is that the close communion between the father and son and the circumstances shown to exist at the time of delivering the deeds so strongly corroborates the testimony of Troy as to establish the verity of their contention. Undoubtedly the relationship existing between the parties previous to the

delivery of the deeds, for whatever purpose they were delivered, and Troy's benevolent attitude toward his younger brothers and sisters and all other members of the family establish sufficient background to have justified the chancellor, had he done so, to conclude that the delivery was made for the purpose of passing title to the Craft tract and of cancelling the debt sued on. But those circumstances are not sufficient to conclusively prove that delivery was actually made for that purpose. On the other hand, we think that the fact that appellee withheld the delivery of all the deeds to all the children for some two and a half years is corroborative of Mr. Deskins' testimony that he desired to continue to withhold delivery until his death. Another circumstance persuasive of the truthfulness of appellee's contention is the uncontradicted fact that the clerk's certificate of recordation was erased from the cover of the deed, indicating a desire on the part of Troy to conceal from his father the fact that the instrument had been recorded. Thus, it will be seen that all of the attendant circumstances do not point unerringly to the truthfulness of the testimony for appellant. The issue was clear, the evidence contradictory, with strong circumstances corroborative of the contention of each of the parties. That being true, the record raises no more than a doubt in our minds as to the correctness of the decision of the chancellor in so far as he held the delivery of the deeds to have been for the purpose of safekeeping.

But the judgment must be reversed upon another ground. Although no plea of settlement was interposed by appellant, appellee testified on direct examination that five years to the day after the execution of the notes, viz., September 8, 1936, he and appellant entered into a settlement concerning the amount of the debt due on that date. He introduced a writing signed by appellant in the following language:

"The balance due Tom Deskins on settlement up to Sept 8, 1936, ($4322.17) Four Thousand three Hundred Twenty-Two Dollars & 17c. Troy Deskins."

The chancellor took no cognizance of this evidence in determining the amount of recovery, but gave judgment for $4,000 with interest thereon at the rate of 6 per centum per annum, subject to credits aggregating $1,125 made in the year 1937, the year following the settlement.

Had no settlement been made, the debt would have amounted to $5,200 on the date the settlement was entered into. Ordinarily settlement must be pleaded, but, where it is shown by the plaintiff himself that a less amount is owed than is claimed in the petition, it is the duty of a court of equity to limit the amount of recovery to the true sum shown by the evidence. This should be done in compliance with the equitable maxim: He who seeks equity must do equity.

The judgment is reversed with directions that it be set aside and that another be entered in favor of the plaintiff against the defendants in the sum of $4,322.17 with interest thereon from September 8, 1936, subject to credits aggregating $1,125 as of the respective dates of payment. The chancellor will enter such additional order as may be necessary to show the cancellation of the deed of release in the records of the clerk of the Pike county court.